Good morning, and may it please the Court. I'm Michael Weinstein from the Federal Public Defender, appearing on behalf of Petitioner Gabriel Barrios. Your Honors, I would like to focus first on Barrios' claim that his plea was involuntary and the Magistrate Judge's factual findings relating to it. So as this Court is aware, in December of 2013, an evidentiary hearing was held in District Court to determine what led to Barrios entering a guilty plea to his third strike. And as of the two main witnesses, Gabriel Barrios and his trial counsel, Lawrence Young, offered conflicting accounts about what transpired. And the Magistrate Judge resolved it? The Magistrate Judge did find both of them not credible. But he had before him, and it's not my first time at the dance either, but it also wasn't Mr. Barrios' first time at the dance. He has signed all the papers. He's waived all his rights. The judge, in accepting his plea, found that the waivers were knowingly, intelligently, and understandingly made. He got almost cross-examined by the prosecutor. Do you understand what you face? And then he makes no protests until now. No. Where I'm looking at now as a district judge, where am I left on the next Rule 11? I've asked the questions. The man has responded properly. Do I have to do an investigation to determine whether or not he really and truly honest engine waived it? What more could have been done? Well, you don't always have to do that. When do I have to do it? Tell me when I'm going to have to do it. I will get to that. Well, tell me now. Okay. So I'll be ready the next time I'm taking a guilty plea. Sure. So the concern that you're raising was addressed by the Supreme Court in Blackwood v. Allison, because what the court said there was that if a defendant is dissatisfied with his plea, he can't just come forward and now say, oh, it was induced, oh, it was coerced. What he has to do is provide sufficient allegations that aren't facially invalid in light of the record. And if he does that, then the court should look past the contemporary statements that were made at the change of plea colloquy and in the waiver form. And that's what happened here, and that's why we're here in this court right now, because there was evidence in the record produced by Gabriel Barrios where he sufficiently detailed why he led, I mean, why he entered a guilty plea to his third strike. And that evidence wasn't facially invalid in light of the record. It was actually corroborated by the record. So, for instance, he said. Where? Yes. Where? Oh. So, for instance, he said in his declaration that his attorney comes into the room right before the change of plea colloquy and tells him that Judge Martinez is going to be the sentencing judge. Really? And that is corroborated by the change of plea. The report is transcribed from the change of plea colloquy, which shows that Young stipulated to Judge Martinez being the sentencing judge. Why does that corroborate a promise that was made? Well, what corroborates the promise that was made is the statements that are made in the Romero motion by Lawrence Young, where he says if Barrios' rendition of the facts is true, then he should only be sentenced to five years for grand theft. Now, I think it's important to contrast what Barrios said with what Lawrence Young said, because as I was saying, this is a he said, he said situation, and the court really should have been trying to figure out who's telling the truth. And he said that neither of them was telling the truth, which to me is actually pretty puzzling. What troubles me about the way that the district court handled this is that the magistrate says that Mr. Young is not credible because he doesn't have a good memory. But then he says that Mr. Barrios is not credible because of things that occurred after he pled guilty. He doesn't say a word about not finding him credible because of things that he said on the stand. So he doesn't discount things that he said on the stand. He doesn't say the guy's lying. He doesn't say that he had a poor demeanor. And so I find it somewhat troubling that I'm left with looking at things that are seem to have other explanations, and for which the magistrate hasn't heard anything that would be unique to the magistrate. In other words, it looks like we can look at this on the same record that the magistrate can. I think that's true. And I think one of the things that is important to recognize at the outset is this clearly erroneous standard doesn't apply with the same force that it normally does for the reasons you seem to be suggesting, which is that the credibility findings weren't based on tone of voice, weren't based on demeanor. They were based on inferences that the magistrate judge drew on documents that were filed and actions that were taken almost a decade before the evidentiary hearing. What's the authority for the view that there are different levels of deference? There are two different cases I would direct the Court's attention to. One is Boese Court v. Consumers Union. It's a Supreme Court case. I can provide you with the citation if you'd like. Is it in your brief? Yes, it is. It's 466 U.S. 485. Up inside is 500. And then this Court just last year, Andreas v. Lewis, explained that the presumption of correctness has lesser force when the findings are based on documentary evidence as opposed to just oral testimony. One of the other things that- How does that apply here? I'm sorry? How does that apply here? Well, because as I just indicated that what the magistrate judge did was he looked at the documents that were filed during the State court proceedings. But here you had testimony. Here you had oral testimony. That's correct. But the average credibility findings weren't based on the oral testimony. It was based on the documents that were filed 10 years ago. There must have been. I mean, if he believed the oral testimony, your client's oral testimony, then he couldn't have found what he did. Well, he discredited the testimony based on these documents and the actions that were taken almost a decade before. So I'm not- Look, it's one thing to say, look, if there are only documents, if there's no testimony, you may have a different standard of review. But when a guy testifies and obviously is not believed, cannot have been believed because the judge finds out the way, isn't that a case where, in fact, he has evaluated the testimony and found it to be lacking? Isn't that exactly where the trial fact gets full deference? Well, I think that you have to examine the basis of the evaluations. I'm sorry. You're saying that the trial fact, the district judge, the magistrate judge has to say, I thought his palms were sweaty or he didn't look me straight in the eye or he looked shifty? I think that- And just finding contrary to the testimony is not good enough? It depends on what the contrary indications are. If he is saying that this is a demeanor-based, tone of voice, credibility finding, then I accept- I'm sorry. Where do you get that? I mean, we have lots of ALJ cases. We have lots of Social Security and immigration cases. We impose that kind of standard on administrative judges, but I've never heard of that imposed on federal judges. Well, Reyes v. Lewis was an Habeas case, and that's where this court said that if there are findings that are based on documents- And so that was a case where the guy testified and there were documents as well? I don't recall if that was exactly the situation there. Well, look it up. You have the case with you? I do. Right now? Yes. Thank you, Your Honor. What was the name of the case? Reyes v. Lewis. Maybe you could save that for a bottle. One last thing that I would like to point out, which has to do with the manner in which Barrios has been litigating this claim, because one of the bases for the magistrate judge's adverse credibility finding was that Barrios was dilatory in raising this claim and inconsistent in how he did so. And both of those bases are contradicted by the record. So after Barrios received the notice of appeal denial from the Superior Court, he was notified that he had counsel, and that counsel, Leonard Claife, wrote him. And within two weeks of hearing from Leonard Claife, within two weeks of that, Barrios raised the factual basis for this claim in a letter to him. Four months after that, Barrios signed a declaration that was then used later in his habeas petitions in support of this claim. In the interim, every time Barrios has had an opportunity to raise this claim by himself, and he's done that three different times, in his pro se petition for rehearing before the California Supreme Court, the pro se petition for writ of habeas corpus before the California Supreme Court, and the pro se federal petition, if you examine all the allegations in those petitions and compare with his testimony, there are no inconsistencies. And I'm running very short on time, so I'd like to reserve the remainder for rebuttal. Thank you. Thank you. May it please the Court, Deputy Attorney General Blythe Leske for Respondent. Good morning. One would expect that a defendant who is promised five years but gets 45 years to life to speak up about that fact immediately, repeatedly, and consistently. How do you do that to a judge who's just sentenced you? If the judge hasn't promised you anything, it's your lawyer, the lawyer isn't present in the courtroom, he sent somebody else to the sentencing hearing, who's he supposed to complain to? Well, he could have complained to the attorney that was there with him. He could have spoken up in court. He did speak up about other things. Yeah, he started hollering immediately, and they carried him out. Well, I don't know that he carried him out, but he did say something, and what he did not say was that I was promised. He then had a meeting with the attorney who was there with him back in lockup. He didn't say anything to her. He then called and spoke to his attorney's office, the paralegal in his attorney's office, the very next day. He didn't say anything to him. There's no follow-up from him where he called the attorney, wrote letters to the attorney, wrote letters to his family, wrote letters to his court, to the court, filed anything in court, spoke to fellow inmates. There's absolutely nothing that he says to anyone in any manner. How soon does he get to Claife? That was in December, so it was about five months following his sentencing. Okay. So he gets a new lawyer, and at that point he makes pretty clear to Claife what he's got. Well, I don't know that he makes it pretty clear. It's unclear what he said to him. Well, Claife seems to think it's pretty clear, and Claife tells him, you can't raise this on direct appeal. We're going to have to do this on habeas. And then the magistrate holds the fact that he didn't raise it on direct appeal against him and says he's not credible because he didn't raise it on direct appeal. Well, Claife has offered an explanation and tells the magistrate, I advised him that he couldn't do this on direct appeal. He had to reserve it for habeas. That's true. And the claim of ineffective assistance of counsel cannot be raised on direct appeal, which is why he reserved it. But what exactly was the content of that claim? That's the question. What exactly did Petitioner tell Claife? Because Claife didn't testify about what Petitioner told him at the evidentiary hearing. He filed a declaration after the fact saying that Petitioner told him that trial counsel guaranteed that his Romero motion would be granted. He doesn't include a copy of the letter from Petitioner. He doesn't include the exact language that Petitioner even used. And that goes further to the fact that once Petitioner did raise this claim, in the course of this litigation he has been completely inconsistent about what this supposed promise was. Sometimes he says that he was promised one strike would be stricken. Sometimes he says that he would be sentenced as a ---- I'm looking at Claife's declaration. Paragraph 4 says, shortly after I informed Mr. Berrius of my appointment, he wrote a letter to me in which he explained to me that the reported victim of the robbery had arranged to be robbed and that he entered the open plea because his attorney, Lawrence Young, guaranteed him his Romero motion would be successful. Right. That seems pretty prompt. Well, even if it is prompt, as I was saying, what exact ---- we don't know exactly what Petitioner said. Claife included a letter that he ---- Well, Claife said that the guy said that he had been robbed, that the robbery was staged, which would have downgraded it and not given him the third strike, and that Young had guaranteed him that his Romero motion would be successful. Well, actually, that's ---- the first part of your statement is not true because even if he had been in on it, so to speak, he still would have been guilty of grand theft, which was a third strike. He still would have been guilty of a felon in possession, which was a third strike. And Claife eventually realized that fact when he kind of gave up his representation of Petitioner, even on habeas, on that basis. That would be ---- that's sort of a harmless error argument, isn't it? Well, no, because that goes to whether he had a defense, and that's actually one of his claims is that he was not told that he had a defense. And, in fact, he didn't. Right. But that would suggest then that any error by the court in this case now is harmless. Well, it would also go to that, yes. It would also go to that. Yes, because he clearly is ---- there's no question of his guilt of having participated in the robbery or the staged fraud or whatever it was. Now, if he doesn't have ---- if there's no reasonable chance of him getting there, that's really sort of a harmless error. But if I thought that the magistrate had committed clear error here in his findings on the credibility, does the State want to argue that it shouldn't go back because it's not going to make any difference here? No, Your Honor. We're arguing that it was not clear error primarily because of all the inconsistencies. The way that ---- But even if it was? Even if what was? I'm sorry. No harm, no foul? I'm not following Your Honor's question. Even if there was clear error there, no harm, no foul? Because that's ---- he was going to get those strikes. Well, no. I mean, if there was clear error, then, I mean, there's no prejudice pronged to the voluntariness claim. What about the intelligence claim? The intelligence claim as far as whether he was advised of his ---- of the elements and defenses? It's pretty clear he wasn't. I mean, his lawyer says he wasn't. Well, the magistrate judge basically found that Young was not credible because he didn't remember. Young stated repeatedly that he did not remember his representation of Petitioner or anybody else from 2005. And the magistrate judge found that his claim or that his statement in the evidentiary hearing was therefore not credible because he stated first that he didn't remember and he made basically multiple inconsistent claims. Well, he says he wasn't told. His lawyer says he wasn't told. The magistrate judge sort of discounts the lawyer's testimony. You still have his statement. And the magistrate judge raises other issues which seem somewhat irrelevant. I mean, the fact that he was convicted of a robbery 10 years earlier. It's 10 years earlier and it wasn't a robbery that involved a claim of staging. Well, that's ---- I'm not sure how that supports the magistrate judge's finding. Well, it goes to the fact that Petitioner's claim that he didn't understand the elements of robbery are really not credible, in part for that reason, in part because he sat through a preliminary hearing where he heard the testimony against him. He had a different attorney, a public defender, during that preliminary hearing, and the fact that when you look at the preliminary hearing testimony as well as the police reports from the time, it's very clear that Blanco, who's the victim in this case, was not in on this crime. Petitioner did not, in fact, have a defense because ---- It doesn't matter. I mean, the magistrate has just said it, but it doesn't matter. The question is not whether he, in fact, would have been successful. Right. The question is whether or not he understood what the case, what the state had approved, which is part of having an intelligent waiver. Right. But if he did not, in fact, have a defense, then there would be no need to have that discussion with him because although he would ---- When you say he didn't have a defense, all you're saying is he wouldn't have been successful. But is that ---- I mean, he could have testified that we're in on it. That's true, and ---- How do we know the jury wouldn't have believed that? Well, when you read the preliminary hearing testimony, Blanco's testimony is he does not hesitate and he does not waffle in any way as far as ---- How can we tell that he doesn't hesitate from the transcript? He is completely consistent from ---- Consistent is different from not hesitating. There's no indication of any hesitation. What do we do with Avila's testimony? Avila's testimony is pretty specific. I worked with Blanco for two years. He was at my house. He knew my car. He knew my cousin, Munguia, is the one who was there with Barrios on that day driving Avila's car. Boy, that sure sounds pretty specific, and it sure sounds pretty damning. Well, it's specific that Blanco and Munguia knew each other, but Avila was not there. He was not present at the time of the crime. He had no inside information about this, about what they were doing, about what others ---- about inside jobs being pulled off at Del Tacos with the manager's complicity and them splitting the proceeds later on. Avila, I believe, says that he was present when one of these managers split some money. Maybe that was Barrios that said he was present. I think when Munguia and a different manager split money. But Avila is pretty specific about everybody being known here and that none of these guys were strangers to each other except for Barrios and Blanco. But certainly Munguia and Blanco would have known each other. And it seems pretty incredible then that Munguia, when he's arrested and talks to the police, does not make any statement of that fact. He, in fact, takes responsibility and provides the police with the way that they have this inside information because Munguia was a manager and had been let go the week before, and he knew their procedures for bank drops, and that's how they knew that this was going to happen. He makes no allegations that Blanco was in on it. He pleads guilty to robbery as well. I don't recall whose explanations, but somebody suggests that Munguia had good reason for pleading guilty here because he didn't have the priors and was probably going to get off pretty light. He's now out of the country, so he's gone. Sure, he did have good reason, but he did plead guilty to robbery, which is the exact offense and also required that he would not have been guilty of as well if Blanco had, in fact, been in on it. But he didn't tell that to police, and in the superior court's order denying petitioners writ in that court, the court goes into pretty good detail about when Munguia pled guilty. He, again, made a statement in court where he took responsibility for this and, again, never claimed that Blanco was in on it. So he's never made that statement. Okay, thank you. Can I sum up? No. Thank you. Thank you, Your Honors. I know I'm short on time, so I'll just make two quick points. The first is I read Reyes. There was no evidentiary hearing there. The credibility finding was based just on documents. I accept it's different from here. I think we fall somewhere between that and the normal rule. And then, finally, with regard to the intelligence, the testimony is consistent regarding whether Barrios knew the elements or the rights that he was waiving. And I think it's also clear that he did not know the law in relation to the facts because Young had never conducted any investigation before the plea, and Young demonstrated a fundamental misunderstanding of robbery law. What difference would it have made if Mr. Barrios had gone to trial on grand theft? What difference would it have made? The State says that the theory that grand theft would not have qualified as a third strike is wrong. Is the State correct on that? I think it's difficult to speculate what would have happened if he had gone to trial. That's a completely different point. Had he been convicted of grand theft, would that have counted as a third strike? It could have counted as a third strike, but it may not have been alleged in an information as a third strike and prosecuted as a third strike. That would have been up to the discretion of the prosecutor. And there's a difference between a grand theft and a robbery because a robbery is a violent crime, and the district attorney's office may have treated the grand theft very differently. And we can speculate now because I've been inviting it. And the trial court or the sentencing court might have treated the grand theft differently with respect to sentencing than they would have from armed robbery. I think that's true, too. Unless there are no further questions. Thank you. Thank you very much, Your Honors. Okay. Cases are being submitted.
judges: Kozinski, Bybee, Walter